UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ALYSSA LLOYD,                                    :
                                                 :
                        Plaintiff,               :
                                                 :
            -against-                            :
                                                 :
THE CITY OF NEW YORK; CORIZON HEALTH,            :
INC.; JAMES RUFLE; UNDERCOVER OFFICER            :
137; PAUL BYRNE; ADRIAN CAMPOS; GREGORY          :      **FIRST AMENDED**
GRAVES; DAVID MILLS; ANNIE PARRIS; SEAN          :      **COMPLAINT**
RYAN; SCOTT VELASQUEZ; UNDERCOVER                :
OFFICER 146; LISA POLITE; SHALONDA               :      **Jury Trial Demanded**
GONZALEZ; MOHAMMED ALAM; ACHILLE                 :
ANTIONE; YVETTE AVERY-HUGHES;                    :      **ECF Case**
DOMINIQUE GEORGES; RACHELLE HOGANS-              :
BLAIR; BERNADETTE JAMES; CYNTHIA                 :      14 Civ. 9968 (GHW) (SN)
LALLEMAND; RAQUEL MURPHY; ESPERANCE              :
NDAYISHIMIYE; JOHN/JANE DOES, Nos. 1-25          :
(members of the New York City Police Department and  :
the New York City Department of Corrections whose    :
names are presently unknown to plaintiff); and JOHN/ :
JANE ROES, Nos. 1-25 (employees or agents of Corizon :
Health, Inc., whose names are presently unknown to   :
plaintiff),                                      :
                                                 :
                        Defendants.              :
------------------------------------------------------------------x

  Plaintiff ALYSSA LLOYD, by her attorney, Robert T. Perry, respectfully alleges as

follows:

## PRELIMINARY STATEMENT

  1. Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, for violation of her civil

rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States

Constitution. Plaintiff also asserts claims under the Americans with Disabilities Act of 1990, 42

U.S.C. §§ 12132 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*  Plaintiff further asserts supplemental claims under New York law.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12132 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

3.      The Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.      The Court has jurisdiction over plaintiff's supplemental state law claims under 28 U.S.C. § 1367.

5.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## JURY DEMAND

6.      Plaintiff respectfully demands trial by jury of all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7.      Plaintiff ALYSSA LLOYD is a resident of Queens, New York.

8.      Defendant THE CITY OF NEW YORK ("the City") is, and was at all times relevant herein, a municipal corporation duly organized and existing under the laws of the State of New York.  The City maintains the New York City Police Department ("NYPD"), which acts as the City's agent in law enforcement and for which the City is ultimately responsible.  The City also maintains the New York City Department of Correction ("NYCDOC"), which acts as the

City's agent in providing correctional services and for which the City is ultimately responsible. The City assumes the risks incidental to the maintenance of police and corrections forces and the employment of police and corrections officers and corrections staff, as such risk attaches to the public consumers of the services provided by them.

9. CORIZON HEALTH, INC. ("Corizon") is a corporation organized under the laws of the State of Tennessee, having its principal place of business in the State of Tennessee. During the relevant times herein, Corizon had a contract with the City to provide health services to individuals incarcerated in NYCDOC correctional facilities.

10. Defendant JAMES RUFLE (Shield No. 4695) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Rufle was a detective assigned to the NYPD's Vice Enforcement Division. Defendant Rufle is being sued in his individual capacity.

11. Defendant UNDERCOVER OFFICER 137 ("UC 137") is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant UC 137 was assigned to the NYPD's Vice Enforcement Division. Defendant UC 137 is being sued in his individual capacity.

12. Defendant PAUL BYRNE is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Byrne was a detective assigned to the NYPD's Vice Enforcement Division. Defendant Byrne is being sued in his individual capacity.

13. Defendant ADRIAN CAMPOS (Shield No. 2518) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant

3

times herein, defendant Campos was a detective assigned to the NYPD's Vice Enforcement Division. Defendant Campos is being sued in his individual capacity.

14.     Defendant GREGORY GRAVES (Shield No. 1085) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Graves was a sergeant assigned to the NYPD's Vice Enforcement Division. Defendant Graves is being sued in his individual capacity.

15.     Defendant DAVID MILLS is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Mills was a detective assigned to the NYPD's Vice Enforcement Division. Defendant Mills is being sued in his individual capacity.

16.     Defendant ANNIE PARRIS (Shield No. 5239) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Parris was a detective assigned to the NYPD's Vice Enforcement Division. Defendant Parris is being sued in her individual capacity.

17.     Defendant SEAN RYAN (Shield No. 7910) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Ryan was a detective assigned to the NYPD's Vice Enforcement Division. Defendant Ryan is being sued in his individual capacity.

18.     Defendant SCOTT VELASQUEZ (Shield No. 5244) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Velasquez was a detective assigned to the NYPD's Vice Enforcement Division. Defendant Velasquez is being sued in his individual capacity.

4

19.     Defendant UNDERCOVER OFFICER 146 ("UC 146") is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD.  During the relevant times herein, defendant UC 146 was assigned to the NYPD's Vice Enforcement Division.  Defendant UC 146 is being sued in her individual capacity.

20.     Defendant LISA POLITE (Shield No. 14914) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD.  During the relevant times herein, defendant Polite was a police officer assigned to the Manhattan Detention Complex.  Defendant Polite is being sued in her individual capacity.

21.     Defendant SHALONDA GONZALEZ (Shield No. 1211) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYCDOC. During the relevant times herein, defendant Gonzalez was assigned to Rikers Island Correctional Facility.  Defendant Gonzalez is being sued in her individual capacity.

22.     Defendant MOHAMMED ALAM is, and was at all relevant times herein, a physician employed by Corizon at Rikers Island Correctional Facility.  Defendant Alam is being sued in his individual capacity.

23.     Defendant ACHILLE ANTIONE is, and was at all relevant times herein, a physician's assistant employed by Corizon at Rikers Island Correctional Facility.  Defendant Antione is being sued in his individual capacity.

24.     Defendant YVETTE AVERY-HUGHES is, and was at all relevant times herein, an RPA employed by Corizon at Rikers Island Correctional Facility.  Defendant Avery-Hughes is being sued in her individual capacity.

25. Defendant DOMINIQUE GEORGES is, and was at all relevant times herein, a nurse assistant employed by Corizon at Rikers Island Correctional Facility. Defendant Georges is being sued in her individual capacity.

26. Defendant RACHELLE HOGANS-BLAIR is, and was at all relevant times herein, a registered nurse employed by Corizon at Rikers Island Correctional Facility. Defendant Hogans-Blair is being sued in her individual capacity.

27. Defendant BERNADETTE JAMES is, and was at all relevant times herein, an LPN employed by Corizon at Rikers Island Correctional Facility. Defendant James is being sued in her individual capacity.

28. Defendant CYNTHIA LALLEMAND is, and was at all relevant times herein, a registered nurse employed by Corizon at Rikers Island Correctional Facility. Defendant Lallemand is being sued in her individual capacity.

29. Defendant RAQUEL MURPHY is, and was at all relevant times herein, employed by Corizon at Rikers Island Correctional Facility. Defendant Murphy is being sued in her individual capacity.

30. Defendant ESPERANCE NDAYISHIMIYE is, and was at all relevant times herein, employed by Corizon at Rikers Island Correctional Facility. Defendant Ndayishimiye is being sued in her individual capacity.

31. All "John Doe" and "Jane Doe" defendants are, and were at all relevant times herein, duly appointed agents, employees, officers, and servants of the NYPD and/or the NYCDOC. The Doe defendants are being sued in their individual capacities.

32. All "John Roe" and "Jane Roe" defendants are, and were at all relevant times herein, employees of Corizon. The Roe defendants are being sued in their individual capacities.

33.     At all relevant times herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers, and servants of the NYPD and the NYCDOC, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.  At all relevant times herein, the individual defendants were acting for and on behalf of the NYPD and the NYCDOC, with the power and authority vested in them as agents, employees, officers, and servants of the NYPD and the NYCDOC.

34.     At all relevant times herein, the individual defendants acted jointly and in concert with each other.  Each individual defendant had the duty and the opportunity to protect plaintiff from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiff's injuries.

## STATEMENT OF FACTS

### Plaintiff's Metastatic Breast Cancer

35.     Plaintiff was diagnosed with Stage 4 metastatic breast cancer in August 2012.

36.     Following extensive chemotherapy, plaintiff underwent a double mastectomy on June 17, 2013.

37.     In the same surgery, two inflatable expanders were inserted into plaintiff's chest to create tissue pockets for permanent breast implants.

38.     Over the next two months, plaintiff received regular saline injections to inflate the expanders gradually.

39.     On August 23, 2013, plaintiff had surgery to replace the right expander because it had malfunctioned.

40.     In mid-September 2013, plaintiff's new right expander began leaking saline, infecting the surrounding tissue.

41.     On Thursday, September 19, 2013, plaintiff's plastic surgeon scheduled plaintiff for surgery on Monday, September 23, 2013, to replace the new right expander and remove the infected tissue.

42.     Plaintiff's plastic surgeon also instructed plaintiff to take a lawfully prescribed antibiotic three times a day to keep the infection in check and change the dressing on her chest as many times as necessary and at least twice daily to keep the area relatively dry.

43.     The next morning, Friday, September 20, 2013, plaintiff underwent pre-op tests for her upcoming surgery.

**Plaintiff's Arrest**

44.     From time to time plaintiff has worked answering telephone calls for young women who offer escort services.

45.     On Friday afternoon, September 20, 2013, plaintiff was to answer telephone calls for a young woman named "Nicole" in an apartment rented by Nicole at 301 East 64th Street in Manhattan.

46.     Plaintiff arrived at 301 East 64th Street at about 3:00 p.m., having spent the morning undergoing the pre-op tests for her upcoming surgery.

47.     Not feeling well, plaintiff told Nicole that she (plaintiff) could not stay long that afternoon.

48.     Sometime after 3:00 p.m., defendant UC 137 called to make an appointment.

49.     At Nicole's direction, plaintiff told defendant UC 137 that she (Nicole) was available.

50.     About 10 minutes later, defendant UC 137 called again to say that he was "here."

51.     Plaintiff let defendant UC 137 into the apartment, asked him to have a seat, and told him that Nicole would be right with him.

52.     Nicole came out from the back room and began speaking to defendant UC 137.

53.     Defendant UC 137 gave Nicole $400 but insisted on $50 change, which Nicole provided from her own purse.

54.     Plaintiff neither took nor received money from defendant UC 137 or Nicole.

55.     After paying Nicole, defendant UC 137 demanded, in sum and substance, that Nicole perform various sexual acts on him.

56.     Noticing that Nicole was visibly upset by defendant UC 137's demand, plaintiff replied, in sum and substance, that "there was no fucking here."

57.     Feeling somewhat uncomfortable with defendant UC 137, Nicole asked plaintiff to stay but then changed her mind.

58.     Plaintiff picked up her belongings and started to leave the apartment.

59.     As plaintiff walked to the front door of the apartment, a number of police officers, including defendants Byrne, Campos, Graves, Mills, Ryan, and Velasquez and Doe defendants, broke down the door and entered the apartment.

60.     Plaintiff was thrown to the floor, aggravating the saline leakage from her right expander.

61.     An officer drew a gun and pointed it at plaintiff.

62.     Even though there was no probable cause to believe that plaintiff had committed any crime or offense, plaintiff was arrested and handcuffed behind her back with double handcuffs.

63.     The handcuffs were so heavy and so tight that the stitches from plaintiff's August 23, 2013 surgery (*see* ¶ 39 *supra*) began to rip.

64.     Plaintiff asked the officers to remove the handcuffs but they refused to do so.

65.     Plaintiff asked the officers to loosen the handcuffs but they refused to do so.

66.     Plaintiff told the officers about her medical condition: that that she had metastatic breast cancer; that she had a double mastectomy; that she had two expanders in her chest; that saline was leaking from the right expander, infecting the surrounding tissue; that she was to have surgery to replace the right expander and remove the infected tissue on Monday, September 23, 2013; and that her plastic surgeon had instructed her to take a lawfully prescribed antibiotic three times a day to keep the infection in check and change the dressing on her chest as many times as necessary and at least twice daily to keep the area relatively dry.

67.     Plaintiff was taken to the 19th Precinct at 153 East 67th Street.

68.     At the 19th Precinct, plaintiff asked for medical attention but an officer (a Doe defendant) persuaded her to withdraw the request, telling plaintiff that any trip to the hospital would delay her arraignment on misdemeanor charges and her release on her own recognizance.

69.     The officer also told plaintiff that she would receive medical attention at Central Booking.

70.     At the 19th Precinct, plaintiff asked to take her lawfully prescribed antibiotics and change the dressing on her chest, which had become filled with pus and soaked with saline.

71.     An officer (a Doe defendant) gave plaintiff one of the antibiotics from her purse but refused to let plaintiff change her dressing, even though there were new dressings in plaintiff's purse.

10

72.     At the 19th Precinct, plaintiff was interrogated by defendant Rufle, who told plaintiff that if she cooperated she would not be charged with a felony.

73.     Defendant Rufle told plaintiff that he was seeking information on businesses that offered underage girls for sex.

74.     Plaintiff denied having any involvement with underage girls but gave defendant Rufle several addresses where others had told her that underage girls might be involved.

75.     Plaintiff told defendant Rufle about her medical condition and asked to take her lawfully prescribed antibiotics and change the dressing on her chest but defendant Rufle refused to let plaintiff do so, stating that no one at the precinct had authority to let plaintiff to take her lawfully prescribed antibiotics or change the dressing on her chest.

76.     At the 19th Precinct, plaintiff was allowed to use a restroom, where she removed the pus-filled and saline-soaked dressing from her chest and replaced it with sanitary napkins, which was all that was available to plaintiff, since officers would not allow her to use the dressings in her purse.

77.     Because the sanitary napkins rapidly became filled with pus and soaked with saline, plaintiff had to replace them every few hours.

78.     The chemicals in the sanitary napkins aggravated the infection in her chest.

79.     Each time that plaintiff removed a sanitary napkin from her chest, skin would rip off due to the adhesive on the napkin.

80.     At the 19th Precinct, plaintiff asked to call her father and doctor but officers (Doe defendants) refused to let her make any telephone calls.

81.     In connection with plaintiff's arrest, officers, including defendants Rufle, UC 137, Byrne, Campos, Graves, Mills, Parris, Ryan, and UC 146, prepared a false and misleading report

which they forwarded to the New York County District Attorney's Office ("District Attorney") and gave false information to the District Attorney about the circumstances of plaintiff's arrest. As a result, the District Attorney decided to prosecute plaintiff.

82.     Late Friday evening, September 20, 2013, plaintiff was taken downtown to Central Booking at 100 Centre Street in Manhattan.

83.     Because plaintiff had an open wound in her chest, the intake officer at Central Booking -- defendant Polite or a Doe defendant -- directed plaintiff to be taken to the 7th Precinct at 19 Pitt Street in Manhattan, where she was held overnight.

84.     At the 7th Precinct, plaintiff asked for but was denied medical attention, an officer (a Doe defendant) telling plaintiff that only her arresting officer could arrange for medical attention.

85.     Plaintiff also asked to take her lawfully prescribed antibiotics and change the dressing on her chest but officers (Doe defendants) refused to let her do so.

86.     Plaintiff further asked to call her father but officers (Doe defendants) refused to let her make the telephone call.

87.     On Saturday, September 21, 2013, plaintiff was taken back to Central Booking.

88.     Late Saturday evening, September 21, 2013, plaintiff was arraigned in the Criminal Court of the City of New York, New York County ("Criminal Court") and charged with Promoting Prostitution in the Third Degree, a class D felony under New York Penal Law § 230.25, and Permitting Prostitution, a class B misdemeanor under New York Penal Law § 230.40.

89.     These charges were false, as plaintiff had committed no crime or offense.

12

90.     The charges were based on a complaint sworn to by defendant Rufle, who alleged, based on information provided by defendant UC 137, that plaintiff told defendant UC 137 that "there is no girlfriend experience, it is $350.00 for straight fucking," and accepted money from defendant UC 137 and provided change to him.

91.     Plaintiff said no such thing to defendant UC 137, accepted no money from him, and provided no change to him.

92.     Plaintiff pled not guilty to the false charges.

93.     Because plaintiff was charged not only with a Class B misdemeanor but also a Class D felony and because officers told the District Attorney that plaintiff might be part of a larger prostitution operation, the arraignment judge set bail at $10,000 bond over $5,000 cash.

94.     Unable to post bail, plaintiff was taken to Rikers Island Correctional Facility ("Rikers").

**Denial of Medical Attention at Rikers**

95.     Upon her arrival at Rikers early Sunday morning, September 22, 2013, plaintiff requested -- from defendants Gonzalez, Alam, Antione, Avery-Hughes, Georges, Hogans-Blair, James, Lallemand, Murphy, and Ndayishimiye, and Doe and Roe defendants -- the antibiotics lawfully prescribed by her plastic surgeon and a change to the dressing on her chest.

96.     Thereafter during her incarceration at Rikers, plaintiff repeatedly requested -- from Doe and Roe defendants -- the antibiotics lawfully prescribed by her plastic surgeon and a change to the dressing on her chest.

97.     Plaintiff did not receive any antibiotics for four days, until Wednesday, September 25, 2013, ostensibly because the medical clinic at Rikers lacked the antibiotics lawfully prescribed by her plastic surgeon.

13

98.     Even though plaintiff eventually received some antibiotics, she never received the antibiotics lawfully prescribed by her plastic surgeon.

99.     Plaintiff was not taken to a hospital where she could be administered the antibiotics lawfully prescribed by her plastic surgeon.

100.    Plaintiff also did not receive a change to the dressing on her chest for almost three days, until late Tuesday afternoon or early evening, September 24, 2013.

101.    Until she received a dressing change, plaintiff had to continue using sanitary napkins to cover the open wound in her chest.

102.    Because the dressing change that she received on Tuesday, September 24, 2013 quickly became pus-filled and saline-soaked, plaintiff requested and received another dressing change on Wednesday morning, September 25, 2013.

103.    When plaintiff requested another dressing change on Wednesday evening, September 25, 2013, because the present dressing had become pus-filled and saline-soaked, plaintiff was refused a dressing change because she had already received a dressing change that morning.

104.    When plaintiff complained about the deliberate indifference to her serious medical needs, the corrections officer on duty outside the medical clinic at Rikers (a Doe defendant) threatened plaintiff with mace and placed her in a metal cage for a time before sending her back to her dorm, without a dressing change.

105.    Plaintiff finally received a dressing change later that evening, Wednesday, September 25, 2013, but only after a psychologist recognized that plaintiff was not mentally unstable but instead was distraught over the deliberate indifference to her serious medical needs.

**Dismissal of the Charges Against Plaintiff**

106.     On Thursday, September 26, 2013, plaintiff was transported from Rikers back to Criminal Court and released on her own recognizance, after six days in custody, because the District Attorney was not ready to proceed in her case.

107.     Thereafter, plaintiff made four more appearances in Criminal Court to defend herself against the false charges and allegations made against her.

108.     On July 29, 2014, all charges against plaintiff were dismissed for failure to prosecute.

**Plaintiff's Resulting Injuries**

109.     Following her release from custody on Thursday, September 26, 2013, plaintiff contacted her plastic surgeon to re-schedule the surgery to replace the right expander in her chest and remove the infected tissue.

110.     On October 3, 2013, the expander on the right side of plaintiff's chest was removed but the infection, which was left untreated during her time in police and corrections custody, had so damaged the surrounding tissue that it was no longer possible to insert a new expander.

111.     As a result of the deliberate indifference to her serious medical needs while in police and corrections custody, plaintiff has a lopsided chest, with an expander on the left side and no expander on the right side.

112.     Not even the baggiest clothes conceal the gross deformity.

113.     Plaintiff's chest is not only grossly deformed but it is also badly scarred because of the infection that was left untreated during her time in police and corrections custody.

114.    Each time that plaintiff removes her clothes and looks in the mirror, she sees her grossly deformed, badly scarred chest.

115.    As a result of the infection in her right chest -- an infection left untreated during her time in police and corrections custody -- plaintiff also has limited use of and constant pain in her right arm.

116.    Given the limited use of her right arm, plaintiff cannot bathe properly and has great difficulty wiping herself after defecating.

117.    Plaintiff knows full well that her cancer will recur sometime in the future, perhaps in the next few years.

118.    Prior to her arrest on Friday, September 20, 2013, and incarceration until Thursday, September 26, 2013, plaintiff hoped at least to have a few years when, with breast reconstruction, she would once again be the attractive woman that she was not long ago.

119.    That hope has been permanently dashed, given what happened to plaintiff between Friday, September 20, 2013, and Thursday, September 26, 2013.

120.    To make matters worse, because officers seized plaintiff's cell phone as "arrest evidence" on Friday, September 20, 2013, plaintiff did not receive a voice mail from her breast cancer doctor advising plaintiff to start hormone therapy immediately to stave off recurrence of the cancer.

121.    Plaintiff only learned that she should have hormone therapy in August, 2014, nearly one year after her breast cancer doctor left her a voice mail advising plaintiff that she should start such therapy immediately.

122.   As a result of the foregoing, plaintiff has sustained, *inter alia*, physical injuries, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of liberty, physical restraints, and violation of her constitutional rights.

## FIRST CLAIM FOR RELIEF

### (False Arrest Claim Under 42 U.S.C. § 1983)

123.   Plaintiff repeats and realleges paragraphs "1" through "122" with the same force and effect as if they were fully set forth herein.

124.   Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause or reasonable suspicion to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (Deliberate Indifference to Serious Medical Needs Claim Under 42 U.S.C. § 1983)

125.   Plaintiff repeats and realleges paragraphs "1" through "124" with the same force and effect as if they were fully set forth herein.

126.   Defendants, acting in concert and within the scope of the authority, acted in deliberate indifference to plaintiff's serious medical needs, disregarding an excessive risk to plaintiff's health and safety, in violation of plaintiff's right to access to medical care during pre-trial detention under the Fourteenth Amendment to the United States Constitution.

### THIRD CLAIM FOR RELIEF

**(Malicious Prosecution Claim Under 42 U.S.C. § 1983)**

127.    Plaintiff repeats and realleges paragraphs "1" through "126" with the same force and effect as if they were fully set forth herein.

128.    Defendants, acting in concert and within the scope of their authority, caused plaintiff to be prosecuted with malice and without probable cause -- a prosecution that terminated in plaintiff's favor -- in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

### FOURTH CLAIM FOR RELIEF

**(Violation-of-Right-to-Fair-Trial Claim under 42 U.S.C. § 1983)**

129.    Plaintiff repeats and realleges paragraphs "1" through "128" with the same force and effect as if they were fully set forth herein.

130.    Defendants created false, fabricated evidence against plaintiff and used that evidence against plaintiff in legal proceedings, in violation of plaintiff's right to a fair trial under the Fourteenth Amendment to the United States Constitution.

### FIFTH CLAIM FOR RELIEF

**(Excessive Force Claim Under 42 U.S.C. § 1983)**

131.    Plaintiff repeats and realleges paragraphs "1" through "130" with the same force and effect as if they were fully set forth herein.

132.    Defendants, acting in concert and within the scope of their authority, used objectively unreasonable force in arresting plaintiff, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM FOR RELIEF

### (Failure-to-Intervene Claim Under 42 U.S.C. § 1983)

133.    Plaintiff repeats and realleges paragraphs "1" through "132" with the same force and effect as if they were fully set forth herein.

134.    Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, despite having had a realistic opportunity to do so, in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## SEVENTH CLAIM FOR RELIEF

### (Municipal Liability Claim Under 42 U.S.C. § 1983)

135.    Plaintiff repeats and realleges paragraphs "1" through "134" with the same force and effect as if they were fully set forth herein.

136.    The individual defendants, singly and collectively, while acting under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules, or usages of the City and the NYPD forbidden by the Constitution of the United States.

137.    The foregoing customs, policies, practices, procedures, rules, and usages include, but are not limited to, making arrests without probable cause, using excessive force, and denying access to medical care to arrestees and pre-trial detainees.

138.    The existence of the foregoing customs, policies, procedures, rules, and usages may be inferred from repeated occurrences of similar wrongful conduct, as documented in recent civil rights actions filed against the City, including, but not limited to:

(1)    **Angel Bonilla v. City of New York**, United States District Court, Eastern District of New York, 12 CV 3368 (JBW) (police officers arrested 53-year-old disabled

19

man inside 83rd Precinct in Brooklyn, where he had gone to ask about granddaughter, and falsely reported that he had trespassed in an apartment building blocks away; excessive force);

(2) **Ciara Caraballo v. City of New York**, United States District Court, Southern District of New York, 11 CV 8917 (JSR) (police officers arrested three individuals in front of 1862 Lexington Avenue in Manhattan on false charges, including assault in the second degree on police officer; excessive force; all charges later dismissed; Civilian Complaint Review Board found that officers lacked probable cause to arrest);

(3) **Michael Hemphill v. City of New York**, United States District Court, Southern District of New York, 11 CV 2160 (AKH) (police officers arrested individual in East Harlem on false charges, including obstructing governmental administration in second degree; excessive force);

(4) **Shelly Levy v. City of New York**, United States District Court, Southern District of New York, 11 CV 0227 (DLC) (police officers arrested individual in Chelsea area on false charges of resisting arrest and disorderly conduct; excessive force);

(5) **Casimiro Medina v. City of New York**, United States District Court, Eastern District of New York, 10 CV 3158 (NGG) (police officers arrested individual in Brooklyn on false drug possession charges; excessive force; decline to prosecute);

(6) **Francisco Baez v. City of New York**, United States District Court, Southern District of New York, 08 CV 10604 (PKC) (police officers arrested 16-year-old near Union Square on false charges, including murder in second degree; officers coerced false confession from 16-year-old; lead detective stated in report that witness positively identified 16-year-old, when, in fact, witness did not; all charges later dismissed);

(7) **Linda Mercado v. The City of New York**, United States District Court, Southern District of New York, 14 Civ. 6775 (KBF) (pre-trial detainee being held at Rikers denied medical treatment for diabetes; detainee lapsed into coma and died);

(8) **Sandra De La Cruz v. The City of New York**, United States District Court, Southern District of New York, 13 Civ. 7391 (PAE) (pre-trial detainee being held at Rikers denied emergency medical treatment after complaining of chest pain, weakness, and cramping in his left leg; detainee later found dead in his cell from ruptured aortic dissection); and

(9) **Luckey v. City of New York**, 120 A.D.3d 403 (1st Dept. 2014) (plaintiff filed action under 42 U.S.C. § 1983 alleging that Rikers officials failed to protect her from reasonably foreseeable harm by providing emergency medical assistance

once she exhibited signs of asthma attack; Appellate Division reversed grant of summary judgment to corrections officer).

139.    In denying the City's motion to dismiss a municipal liability claim in *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009), the Honorable Jack B. Weinstein, United States District Judge, observed:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department, there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Id.* at *2.

140.    Seemingly acknowledging the problem, then (now former) New York City Police Commissioner Raymond E. Kelly stated, "When it happens, it's not for personal gain. It's more for convenience." Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19.

141.    Between 2005 and 2009, the NYPD refused to prosecute 40% of the cases referred by the Civilian Complaint Review Board ("CCRB") for prosecution. Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19. And only 25% of the cases found substantiated by the CCRB resulted in NYPD discipline more severe than verbal instructions. *Id.*

142.    The City has inadequately screened, hired, retained, trained, and supervised its employees, including the individual defendants herein, to respect the constitutional rights of

those individuals with whom NYPD police officers and NYCDOC agents and employees come in contact.

143.    The foregoing customs, policies, practices, procedures, rules, and usages constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

144.    The foregoing customs, policies, practices, procedures, rules, or usages were the direct and proximate cause of the constitutional violations suffered by plaintiff.

145.    The foregoing customs, policies, practices, procedures, rules, or usages were the moving force behind the constitutional violations suffered by plaintiff.

## EIGHTH CLAIM FOR RELIEF

### (Failure to Provide Reasonable Accommodation Under the Americans with Disabilities Act and the Rehabilitation Act of 1973)

146.    Plaintiff repeats and realleges paragraphs "1" through "145" with the same force and effect as if they were fully set forth herein.

147.    At all relevant times herein, plaintiff has suffered from a "disability" as defined by Title II of the Americans With Disabilities Act ("ADA").  42 U.S.C. § 12102(1).

148.    At all relevant times herein, plaintiff's disability has prevented her from performing "major life activities" as that term is defined by Title II of the ADA.  42 U.S.C. § 12102(2).

149.    At all relevant times, the City of New York, the NYPD, and the NYCDOC are "public entities" as that term is defined by Title II of the ADA.  42 U.S.C. § 12131(2).

150.    At all relevant time, the benefits to which plaintiff was entitled as an arrestee and pre-trial detainee were part of a program or activity receiving federal financial assistance.

151.    Plaintiff was denied a reasonable accommodation for her disability, in violation of the ADA and the Rehabilitation Act of 1973.  42 U.S.C. §§ 12111(9)(B), 12112(b)(5); 29 U.S.C. § 794.

### Supplemental State Law Claims

152.    Plaintiff repeats and realleges paragraphs "1" through "151" with the same force and effect as if they were fully set forth herein.

153.    Within ninety (90) days after the claims herein arose, plaintiff duly served upon, presented to, and filed with the City a Notice of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

154.    More than thirty (30) days have elapsed since the presentation of plaintiff's claims to the City.  The City has wholly neglected or refused to make an adjustment or payment thereof.

155.    This action was commenced within one year and ninety (90) days after the claims accrued.

156.    Plaintiff has complied with all conditions precedent to maintaining the instant action.

### NINTH CLAIM FOR RELIEF

### (False Arrest Claim Under New York Law)

157.    Plaintiff repeats and realleges paragraphs "1" through "156" with the same force and effect as if they were fully set forth herein.

158.    Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause to believe that plaintiff had committed any crime or offense, and without any warrant or authority to do so.

## TENTH CLAIM FOR RELIEF

### (Assault Claim Under New York Law)

159.    Plaintiff repeats and realleges paragraphs "1" through "158" with the same force and effect as if they were fully set forth herein.

160.    Defendants, acting in concert and within the scope of their authority, placed plaintiff in apprehension of imminent harmful and offensive bodily contact.

## ELEVENTH CLAIM FOR RELIEF

### (Battery Claim Under New York Law)

161.    Plaintiff repeats and realleges paragraphs "1" through "160" with the same force and effect as if they were fully set forth herein.

162.    Defendants, acting in concert and within the scope of their authority, made offensive contact with plaintiff without privilege or consent.

## TWELFTH CLAIM FOR RELIEF

### (Deliberate Indifference to Serious Medical Needs Claim Under New York Law)

163.    Plaintiff repeats and realleges paragraphs "1" through "162" with the same force and effect as if they were fully set forth herein.

164.    Defendants, acting in concert and within the scope of the authority, acted in deliberate indifference to plaintiff's serious medical needs, disregarding an excessive risk to plaintiff's health and safety.

## THIRTEENTH CLAIM FOR RELIEF

### (Malicious Prosecution Under New York Law)

165.    Plaintiff repeats and realleges paragraphs "1" through "164" with the same force and effect as if they were fully set forth herein.

166.    Defendants, acting in concert and within the scope of their authority, caused plaintiff to be prosecuted with malice and without probable cause -- a prosecution that terminated in plaintiff's favor.

## FOURTEENTH CLAIM FOR RELIEF

### (*Respondeat Superior* Liability Under New York Law)

167.    Plaintiff repeats and realleges paragraphs "1" through "166" with the same force and effect as if they were fully set forth herein.

168.    The City is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the above unlawful conduct.

## FIFTEENTH CLAIM FOR RELIEF

### (Negligent Screening, Hiring, and Retention Under New York Law)

169.    Plaintiff repeats and realleges paragraphs "1" through "168" with the same force and effect as if they were fully set forth herein.

170.    The City failed to use reasonable care in the screening, hiring, and retention of the NYPD and NYCDOC employees who participated in the above unlawful conduct.

## SIXTEENTH CLAIM FOR RELIEF

### (Negligent Training and Supervision Under New York Law)

171.    Plaintiff repeats and realleges paragraphs "1" through "170" with the same force and effect as if they were fully set forth herein.

172.    The City failed to use reasonable care in the training and supervision of the NYPD and NYCDOC employees who participated in the above unlawful conduct.

**SEVENTEENTH CLAIM FOR RELIEF**

**(Intentional Infliction of Emotional Distress Under New York Law)**

173.   Plaintiff repeats and realleges paragraphs "1" through "172" with the same force and effect as if they were fully set forth herein.

174.   Defendants, acting in concert and within the scope of their authority, subjected plaintiff to extreme and outrageous conduct which exceeded all reasonable bounds of decency for the sole purpose of causing severe emotional distress to plaintiff.

**EIGHTEENTH CLAIM FOR RELIEF**

**(Negligent Infliction of Emotional Distress Under New York Law)**

175.   Plaintiff repeats and realleges paragraphs "1" through "174" with the same force and effect as if they were fully set forth herein.

176.   Defendants, acting in concert and within the scope of their authority, breached their duty to provide prompt and adequate medical care to plaintiff, causing plaintiff to fear for her own safety and resulting directly in emotional harm to plaintiff.

**NINETEENTH CLAIM FOR RELIEF**

**(Negligence)**

177.   Plaintiff repeats and realleges paragraphs "1" through "176" with the same force and effect as if they were fully set forth herein.

178.   Defendants, acting in concert and within the scope of their authority, breached their duty to provide medical care to plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants:

(A)    Compensatory damages in an amount to be determined at trial;

(B)    Punitive damages in an amount to be determined at trial;

(C)    Reasonable attorney's fees and costs of this litigation; and

(D)    Such other relief as this Court deems just and proper.

Dated: Brooklyn, New York
May 8, 2015

Respectfully submitted,

/s/
ROBERT T. PERRY (RP-1199)
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*

TO:    <u>BY ECF AND FIRST CLASS MAIL</u>
Elissa B. Jacobs, Esq.
Assistant Corporation Counsel
*Attorney for Defendants*

27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ALYSSA LLOYD,                                    :
                                                 :
                                Plaintiff,       :
                                                 :
                    -against-                    :
                                                 :
THE CITY OF NEW YORK; CORIZON HEALTH,            :
INC.; JAMES RUFLE; UNDERCOVER OFFICER            :
137; PAUL BYRNE; ADRIAN CAMPOS; GREGORY          :
GRAVES; DAVID MILLS; ANNIE PARRIS; SEAN          :
RYAN; SCOTT VELASQUEZ; UNDERCOVER                :
OFFICER 146; LISA POLITE; SHALONDA               :
GONZALEZ; MOHAMMED ALAM; ACHILLE                 :        14 Civ. 9968 (GHW) (SN)
ANTIONE; YVETTE AVERY-HUGHES;                    :
DOMINIQUE GEORGES; RACHELLE HOGANS-              :
BLAIR; BERNADETTE JAMES; CYNTHIA                 :
LALLEMAND; RAQUEL MURPHY; ESPERANCE              :
NDAYISHIMIYE; JOHN/JANE DOES, Nos. 1-25          :
(members of the New York City Police Department and :
the New York City Department of Corrections whose :
names are presently unknown to plaintiff); and JOHN/ :
JANE ROES, Nos. 1-25 (employees or agents of Corizon :
Health, Inc., whose names are presently unknown to  :
plaintiff),                                      :
                                                 :
                                Defendants.      :
------------------------------------------------------------------------x

## FIRST AMENDED COMPLAINT

ROBERT T. PERRY
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*